IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AARON P., and PUAKIELENANI P. )<br>In their capacity as parents )<br>and legal guardians of The )<br>Student K., )<br> )<br>Plaintiff-Appellant, )<br> )<br>vs. )<br> )<br>STATE OF HAWAII, DEPARTMENT )<br>OF EDUCATION, )<br> )<br>Defendant-Appellee. )<br>_____ ) | CIV NO 11-00635 ACK-RLP |
| STATE OF HAWAII, DEPARTMENT )<br>OF EDUCATION, )<br> )<br>Plaintiff-Appellant, )<br> )<br>vs. )<br> )<br>AARON P., and PUAKIELENANI P. )<br>In their capacity as parents )<br>and legal guardians of The )<br>Student K., )<br> )<br>Defendant-Appellee. )<br>_____ ) | CIV NO 11-00711 ACK-RLP |

ORDER DENYING PARENTS' SECOND MOTION FOR SUMMARY JUDGMENT AND
AFFIRMING IN PART AND REMANDING IN PART THE ADMINISTRATIVE
DECISION

BACKGROUND

I.   Legal Background

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., was enacted by Congress to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) & (B). The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA. See R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1121 (9th Cir. 2011).

Under the IDEA, state and local education agencies are required to identify children with disabilities and develop annual Individual Education Programs ("IEPs") for every child. 20 U.S.C. § 1414. An IEP is a comprehensive document developed by a team of parents, teachers, and other school administrators setting out the goals for the child, and the special education and related services that are necessary to reach those goals. Id. § 1414(d). The IDEA also provides procedural safeguards to help ensure that the child receives a FAPE, including an opportunity for due process hearings for complaints alleging any violation of the IDEA. K.D. v. Dep't of Educ., Hawaii, 665 F.3d

2

1110, 1114 (9th Cir. 2011).  During the pendency of any

proceedings conducted pursuant to the IDEA, the child is entitled

to remain at her "then-current educational placement."  20 U.S.C.

§ 1415(j).

## II.  Procedural Background

K. ("Student") is a student who is eligible for special

education under the IDEA.  Acting on her behalf, her parents,

Aaron P. and Puakielenani P. ("Mother") (collectively,

"Parents"),[1] on July 15, 2010, and December 15, 2010, filed

Requests for Impartial Due Process Hearings challenging the

sufficiency of Student's IEPs formed on September 17, 2009, and

August 27, 2010.  Administrative Record on Appeal ("Admin.

Rec."), at 1-16, 41-49.  The administrative hearings officer

("Hearings Officer") consolidated the two cases, DOE SY1011-005

and DOE-SY1011-084.  Id. at 70-72.

On September 20, 2011, the Hearings Officer issued a

decision concluding that Student had been denied a FAPE because

the September 17, 2009 IEP did not offer an appropriate program

and placement and the August 27, 2010 IEP did not offer an

---

[1] The Court consolidated Parents' appeal, Civ. No. 11-00635
ACK-RLP, with the DOE's appeal, Civ. No. 11-00711 ACK-RLP.  Doc.
No. 22.  On March 9, 2012, the Court issued an order directing
the parties to file and docket all further pleadings in Civ. No.
11-00635.  Doc. No. 28.

appropriate placement.  Id. at 343-81 ("Admin. Dec.").[2/]  The Hearings Officer further concluded that Student's current private placement, the Pacific Autism Center ("PAC"), is an appropriate placement.  Admin. Dec. 37.  The Hearings Officer deemed Parents prevailing parties and granted Parents "reimbursement for the costs of continued placement at the current private placement, including transportation and other related services, for the periods of August 3, 2009 to June 30, 2010, and December 6, 2010 to present [(September 20, 2011)]."  Id. at 39.  The Hearings Officer denied Parents' requests for reimbursement for private evaluations and compensatory education.  Id.

On October 20, 2011, Parents filed an appeal in this Court requesting attorneys' fees and challenging numerous findings of fact, the failure of the Hearings Officer to address their claim that the DOE failed to implement Student's August 27, 2010 IEP, and the denial of reimbursement for evaluations and compensatory education.  Doc. No. 1 ("Parents' Compl.").

Also on October 20, 2011, the Hawaii Department of Education (the "DOE") filed an appeal in state court.  See Doc. No. 10-1 ("DOE's Compl.").  The DOE seeks a finding that it provided a FAPE to Student, reversal of the Administrative Decision, attorneys' fees, a denial of Parents' request for

_____

[2/]Hereafter, the Court will cite to the original page numbers of the Administrative Decision, i.e., 1-39, rather than pages 343-81 of the administrative record.

attorneys' fees, and such further relief as may be just and equitable under the circumstances.  Id.  Prayer for Relief. Parents removed the DOE's appeal to this Court on November 20, 2011.  Doc. No. 10.  On February 6, 2012, the Court consolidated these two appeals.  Doc. No. 22.

On June 8, 2012, Parents filed an opening brief ("Parents' Opening Br.").  Doc. No. 69.  On June 12, 2012, the DOE filed an opening brief ("DOE's Opening Br.").  Doc. No. 73. On July 10, 2012, Parents filed an answering brief to the DOE's opening brief ("Parents' Answering Br."), Doc. No. 80, and the DOE filed an answering brief to Parents' opening brief ("DOE's Answering Br.").  Doc. No. 79.  On July 24, 2012, Parents filed an optional reply brief to DOE's Answering Brief ("Parents' Reply").  Doc. No. 94.

Meanwhile, on March 9, 2012, Parents filed a Motion for Partial Summary Judgment seeking an order enforcing stay put payments and for summary adjudication that PAC did not charge unreasonable fees.  Doc. No. 31.  On March 27, 2012, and April 17, 2012, the Court granted Parents' motions to supplement the record on appeal to add evidence related to their stay put claim. Doc. Nos. 53 & 63.  On May 4, 2012, the Court granted Parents' Motion for Partial Summary.  Doc. No. 67 ("Stay Put Order").  The Court held that PAC is Student's "then-current educational placement," within the meaning of the IDEA's stay put provision,

20 U.S.C. § 1415(j), and that Student is entitled to stay put relief.  See Stay Put Order at 28.  Parents asked the Court to "summarily adjudicate that portion of the 9/20/2011 HOD which correctly refrained from finding PAC fees 'unreasonable.'"  Doc. No. 58, at 6.  The DOE did not oppose this request and therefore the Court concluded that the DOE has waived any argument that PAC's fees are unreasonable.  See Stay Put Order at 28.

> Specifically, the Court concluded:
>
> [T]he DOE's obligation to pay for Student's PAC costs began when the placement became bilateral on September 20, 2011 – the date of the Hearing Officer's decision.  The DOE is responsible for Student's PAC costs and fees, including late fees, from September 20, 2011, until the conclusion of the instant proceedings.
>
> The DOE is directed to reimburse Parents for any tuition they paid for this time period and to pay the balance of the amount owed to PAC directly.

Id. at 29 (internal citation omitted).  The Court ordered that the DOE meet its obligations for bills incurred up to the date of its Order (May 4, 2012) by May 31, 2012, "provided that the DOE must pay Student's June tuition by PAC's due date."  Id. at 30.

On July 10, 2012, Parents filed a Second Motion for Partial Summary Judgment ("Parents' Sec. MSJ"), accompanied by a supporting memorandum ("Parents' Sec. MSJ Mem.") and concise statement of facts ("Parents' CSF").  Doc. Nos. 81 & 82.  In this motion, Parents seek to amend the record on appeal to add

6

evidence related to the DOE's alleged noncompliance with the Court's Stay Put Order, a declaration that the DOE has not complied with all of its stay put obligations, an order enforcing the DOE's stay put obligations, and a declaration that the DOE's post-Stay Put Order actions and inactions separately denied Student a FAPE.  Parents' Sec. MSJ 2-6.  The evidence Parents seek to add to the record is Exhibits A-X to Parents' Second Motion for Partial Summary Judgment.  See Doc. Nos. 82-92.

The DOE filed an opposition to Parents' Second Motion for Summary Judgment on August 22, 2012 ("DOE's Opp'n to Sec. MSJ"), and a reply to Parents' CSF ("DOE's CSF").  Doc. Nos. 96 & 97.  On August 29, 2012, Parents filed a reply.  Doc. No. 98.

On September 12, 2012, the Court held a hearing on the parties' administrative appeals and on Parents' Second Motion for Partial Summary Judgment.

III. **Factual Background**[3]

Student is a seven-year-old child who is eligible for special education under the IDEA.  In July 2009, Mother and Student moved from Maui to Oahu, where Student's home school is Ahuimanu Elementary School (the "home school" or "Ahuimanu").  Admin. Dec. 4.  Student's last Maui IEP was developed on July 17,

---

[3]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

2009 IEP (the "July 2009 Maui IEP").  Id. at 4.  The July 2009
Maui IEP offered student numerous supplemental aids and services
including paraprofessional support for 34.25 hours per week,
autism consultation services for 240 minutes per month, and
behavioral analyst support for 20 hours per month.  Id.  It
stated, "Due to [Student's] global developmental delays . . . an
intensive program in the areas of functional communication,
physical and emotional regulation, social interaction, self
help/daily living skills, cognitive/pre-academic skills, fine
motor skills is needed."  Id.  This IEP was never implemented,
however, due to Student's move to Oahu.  Id.

Student's IEP team met at the current home school,
Ahuimanu, on August 27, 2009 to determine Student's eligibility
under the IDEA and on September 17, 2009, to develop an IEP for
Student at the home school.  The IEP developed at this meeting
("the September 17, 2009 IEP") provided for special education
services for the entire school day, direct speech-language
therapy services of 540 minutes a quarter, direct occupation
therapy services of 270 minutes a quarter, 1:1 instructional
support of 1740 minutes per quarter, behavioral analyst support
of 20 hours per month, parent education services of 240 minutes
per month, and physical therapy consultation services of 30

minutes per quarter.  DOE's Admin. Ex. 10, at 175.[4/]  The IEP team determined that Student did not require physical therapy services, nor an extended school day to derive educational benefit.  See Admin. Dec. 8.

Student began attending PAC on August 3, 2009.  Admin. Dec. 5.  Parents wrote a letter, stamped received by Student's Maui home school on July 6, 2009, that Parents disagreed that the Maui IEP offered Student a FAPE and they were enrolling Student in a private placement at public expense.  DOE's Admin. Ex. 28, at 623.  The DOE, however, did not receive a letter from Parents regarding the September 17, 2009 IEP until June 22, 2010, in which Parents stated they disagreed that the September 17, 2009 IEP offered Student a FAPE.  Id.  Due to financial considerations, Student stopped attending PAC on June 30, 2010. Id.

Student's IEP team met on July 19, 2010, August 10, 2010, and on August 27, 2010 to develop the second IEP for Student at the current home school.  See DOE's Admin. Ex. 12, at 231.  At this meeting, the IEP team had the August 26, 2009 speech-language evaluation and a January 2010 progress report from PAC.  Id. at 232.  The IEP developed at this meeting ("the

---

[4/]The parties' exhibits from the administrative hearing are not separately numbered.  The Court uses the cumulative numbering in the record, rather than the numbering of the individual exhibits.

August 27, 2010 IEP") provided for special education services of 1770 minutes per week, direct occupational therapy ("OT") services of 60 minutes per week, direct speech-therapy services of 60 minutes twice a week, 1:1 instructional support services of 720 minutes per week after school, Autism Educational Consultation services of 15 hours a month after school, parent education services of 4 hours a month, physical therapy consultation services as needed, team meetings of 90 minutes per month, and Autism Educational Consultation Services during school of 15 hours a month. See id. at 250-51. Student's mother was present at the July 2010 and August 2010 IEP meetings. See Admin. Tr. Vol. IV, at 550-55, 576-82.

Meanwhile, during the Summer of 2010, Student attended a home program but continued to receive speech/language services at PAC. Admin. Dec. 10. Student began attending the home school on September 10, 2010. Id. at 13. On December 1, 2010, Parents withdrew Student from the home school. Id. at 18. Student re-enrolled at PAC on December 6, 2010. Id.

## STANDARD

### I.   Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is therefore appropriate if "the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so in either of two ways: by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

       "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[5] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

_____

       [5]Disputes as to immaterial facts do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

574, 587 (1986) (citing <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006). The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.[6/] Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See <u>Celotex</u>, 477 U.S. at 324; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[7/]

---

[6/]When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. See <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. See <u>id.</u> (citing <u>Celotex</u>, 477 U.S. at 325).

[7/]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987); <u>Johnson v. Wash. Metro. Area Transit Auth.</u>, 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal

The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  See T.W. Elec. Serv., 809 F.2d at 630-31.[8/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Anderson, 477 U.S. at 250-51.

## II.  Review of Administrative Appeals

In evaluating an appeal of an administrative decision under the IDEA, the district court "(I) shall receive the records of the administrative proceedings; (ii) shall hear additional

_____

of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), cited in Villiarimo, 281 F.3d at 1061.

[8/]At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  See Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).[9]

The statutory requirement "that a reviewing court base its decision on 'the preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  Rather, "due weight" must be given to the findings in the administrative proceedings.  Id.

The amount of deference given to an administrative hearings officer's findings is a matter of discretion for the court.  See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)).  The court must "consider the findings 'carefully and endeavor to respond to the hearing officer's resolution of each material issue,' but the court 'is free to accept or reject the findings in part or in whole.'" Id. (quoting Gregory K., 811 F.2d at 1311).  "When

---

[9]An amendment to the IDEA, effective July 1, 2005, affected the subsection number at which this provision appears in the statute, but did not affect the text of the provision.  Compare 20 U.S.C. § 1415(i)(2)(B) (in effect prior to July 1, 2005) with 20 U.S.C. § 1415(i)(2)(C) (effective July 1, 2005).  Thus, the Court's analysis on this issue is identical under either version of the statute.

exercising its discretion to determine what weight to give the

hearing officer's findings," the court may "examine the

thoroughness of those findings" and accord greater deference when

they are "'thorough and careful.'" Id. (quoting Union Sch. Dist.

v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994)).

A court's inquiry in reviewing administrative decisions

under the IDEA is twofold: "First, has the State complied with

the procedures set forth in the Act?  And second, is the

individualized educational program developed through the Act's

procedures reasonably calculated to enable the child to receive

educational benefits?  If these requirements are met, the State

has complied with the obligations imposed by Congress and the

courts can require no more." Rowley, 458 U.S. at 206-07

(footnotes omitted); see also Smith, 15 F.3d at 1524.

## DISCUSSION

## I.   The Stay Put Claim

Parents' second motion for summary judgment seeks to

supplement the record on appeal with documents related to the

DOE's conduct regarding Parents' stay put claim.  Parents also

ask this Court to conclude that "DOE's failure to pay stay put

causing Student's suspension from April 4, 2012 to May 1, 2012

and/or DOE's increasingly burdensome monitoring demands upon

Student K. and/or PAC, resulted in impeding Student K.'s right to

a FAPE significantly impeding parents' opportunity to participate

in the decision-making process regarding the provision of FAPE, and caused deprivation of education benefits to Student K., violating IDEA justifying the stay put remedial relief sought." Parents' Sec. MSJ Mem. 25.  Parents also assert that the DOE has failed to pay to PAC a portion of the stay put amount ordered by the Court and has incurred further late fees.  See Parents' Sec. MSJ Declaration of Puakielenani P. ¶¶ 37-44.

   A.   **Supplementation of the Record**

      "A claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP."  Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 160 (2d Cir. 2004).  The Court will thus consider Parents' exhibits in the limited context of Parents' motion to enforce stay put.  It is improper to consider them in context of the administrative appeal because they relate to events after the Hearings Officer's decision and are not otherwise applicable to the issues raised in the administrative appeals.  See E.M. v. Pajaro Valley Unified Sch. Dist., 652 F.3d 999, 1004 (9th Cir. 2011).

   B.   **DOE's Alleged Denial of FAPE**

      The DOE asserts that Parents' claim that the DOE's actions regarding stay put payments is a denial of FAPE has not been administratively exhausted and thus is not properly before

this Court.  <u>See</u> DOE's Opp'n to Sec. MSJ 6-7.  Parents claim that exhaustion is not required here because this is a stay put issue. Parents' Reply Re Sec. MSJ 8.  Parents further assert that exhaustion would be futile and inadequate in this instance as the DOE's conduct "evinces both a past and an ongoing deliberate willful refusal to timely pay stay put."  <u>Id.</u> at 8-9.

The exhaustion requirement does not apply to an original stay put motion and to enforce stay put orders.  <u>See</u> <u>N.D. v. Haw. Dep't of Educ.</u>, 600 F.3d 1104, 1110-11 (9th Cir. 2010).  It does apply, however, to Parents' FAPE claim.

The Ninth Circuit has explained that the IDEA's exhaustion requirement applies to claims to the extent that the relief sought by the plaintiff could have been provided by the IDEA.  <u>Payne v. Peninsula Sch. Dist.</u>, 653 F.3d 863, 871 (9th Cir. 2011) (en banc), <u>cert. denied</u>, --- S.Ct. ----, 2012 WL 538336 (Feb. 21, 2012).  It explained that "where the claim arises only as a result of a denial of a FAPE, whether under the IDEA or the Rehabilitation Act, exhaustion is clearly required no matter how the claim is pled."  <u>Id.</u> at 880.  Accordingly, this district court has explained that claims not raised in the request for due process hearing are not properly before the court.  <u>See</u> <u>I.T. v. Dep't of Educ., Haw.</u>, Civ. No. 11-00676 LEK-KSC, 2012 WL 3113166, at *13 (D. Haw. July 30, 2012).

Exhaustion may be avoided if "it would be futile or

offer inadequate relief." <u>James M. v. Haw.</u>, 803 F. Supp. 2d 1150, 1164 (D. Haw. 2011) (internal quotations omitted); <u>see</u> <u>Payne</u>, 653 F.3d at 870.  Here, however, Parents have failed to show that exhaustion would be futile or inadequate.  The Court has ordered the DOE to pay stay put and retains jurisdiction to enforce this order.  The DOE, although untimely, has paid such stay put.  Thus, Student is currently attending PAC and is entitled to continue to attend PAC at the DOE's expense while this litigation remains pending.  Consequently, Parents' assertion that Student faces "eminent [sic] harm" if it has to exhaust this claim is without merit.  <u>See</u> Parents' Reply re Sec. MSJ 9.  Exhaustion would not be futile as the Hearings Officer is capable of reviewing Parents' claim that the DOE's post-administrative actions have denied Student a FAPE and awarding any appropriate relief.

Consequently, Parents' claim that Student was denied a FAPE through the DOE's failure to timely pay stay put must be brought in the first instance in an administrative proceeding.

## C.   DOE's Compliance with the Court's Stay Put Order

The DOE asserts that it mistakenly did not pay $11,733.36 of the amount the Court ordered it to pay to PAC pursuant to Student's stay put rights and also owes PAC $6,910.68 in late fees and interest.  DOE's Opp'n to Sec. MSJ 4-5.  The DOE asserts that furthermore, "even though the DOE has explained to

PAC that it makes payment after services are rendered the DOE will be paying for the late fees and interest for the months of May, June, and July 2012." Id. at 5.  At the hearing, the DOE and Parents notified the Court that the DOE has paid the foregoing amounts.  Consequently, as Parents recognized at the hearing, their claim regarding enforcing the DOE to pay stay put is rendered moot.

### D.   Parents' Claim Regarding Act 129

Parents additionally assert that Hawaii's Act 129 "is invalid on its face as it allows arbitrary and capricious denials of FAPE based upon a monitoring or billing dispute impermissibly providing disabled students with less than what is required under the IDEA."  Parents' Sec. MSJ 24.  Hawaii's Act 129 addresses the DOE's responsibilities and authority regarding the monitoring of private placements for students with disabilities and allows the DOE to withhold payment to private schools that restrict or deny access to the DOE for monitoring.  See Haw. Rev. Stat. § 302A-443.

Parents' claim regarding Act 129 is not ripe and thus the Court does not have jurisdiction to review it at this time.[10]

_____

[10]The Court notes that in a motion for a preliminary injunction in F.K v. Dep't of Educ., Haw., Civ. No. 12-00136 ACK-RLP (D. Haw.), the parents raised a similar claim after the DOE withheld stay put payments based upon a private placement's alleged violations of the monitoring requirements of Act 129. The Court held that Plaintiffs were likely to succeed on the merits of the claim that Act 129's withholding provision

"The ripeness doctrine seeks to avoid litigation of matters that are premature for review because the injury is speculative and may never occur." See United States v. Streich, 560 F.3d 926, 931 (9th Cir. 2009). "A claim is not ripe if it involves contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (internal quotations omitted). If the injury is "certainly impending," however, the claim is ripe. Id. In determining whether a claim is ripe, a court should consider "both the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration." Id. (internal quotations omitted).

The DOE has not asserted to Parents or the Court that it is withholding stay put payments pursuant to Act 129. The letters from the DOE to PAC that mention Act 129 state "[p]lease let me know if it will be a problem observing [Student] in the settings and situations requested." Parents' Sec. MSJ Exs. E & L. Parents consented to the monitoring, which the DOE asserts is being conducted in preparation for an annual review of an IEP which was due in August 2012. DOE's CSF ¶ 11. [Moreover, the DOE has paid the contested stay put payments.] Parents have failed to establish that they or Student will suffer any harm from the DOE's actions regarding Act 129.

_____

(subsection (i)) is in conflict with, and accordingly preempted by, the Stay Put provision of the IDEA. See id. at Doc. No. 33 (June 22, 2012), at 33-37.

Consequently, Parents claim asserting Act 129 is
invalid in that it allows the DOE to withhold stay put payments
if monitoring is not allowed is not ripe for judicial review.
See Haw. Cnty. Green Party v. Clinton, 124 F. Supp. 2d 1173, 1194
(D. Haw. 2000).

## II.  Administrative Review

The Court first notes that the cross-appeals are based
on the same administrative decision and the appeals largely
overlap.  Therefore, the Court will not separately consider the
cross-appeals.  The Court will first discuss the preliminary
issues of the DOE's alleged default, Parents' alleged unexhausted
claims, the DOE's payment of some funds, and the amount of
deference to give to the Hearings Officer's decision.  The Court
will then discuss whether the September 17, 2009 IEP provided
Student with a FAPE, whether the August 27, 2010 IEP provided
Student with a FAPE, whether Parents are entitled to
reimbursement for PAC tuition, Parents' claims for compensatory
education and reimbursement for private evaluations, and the
parties' claims for attorneys' fees.

### A.  Preliminary Issues

#### 1.  The DOE's Alleged Default

Parents assert that because the DOE did not answer a
purported counterclaim to the DOE's appeal, Student is entitled
to a favorable decision on all issues raised in Parents'

21

counterclaim by default.  Parents' Br. 12.  Parents, however, did not file a clear counterclaim.  Instead, in their answer to the DOE's complaint, Parents included a section titled "Counter Claim And/Or Cross Appeal."  See Civ. No. 11-00711 ACK-RLP, Doc. No. 4, at 20.  In this section Parents state:

> 1. Defendant counterclaims and/or cross appeals from the HOD in 11-cv-00711 herein, as more fully set forth in Defendant's Complaint filed October 20, 2011 in USDC Civ. No. 11-00635 ACK-RLP.
>
> 2. Defendant's Complaint in 11-cv-00635 ACK-RLP is incorporated herein by reference, as if more fully set forth herein.

Id.

Parents' Complaint states that it is an appeal from the Hearings Officer's decision.  See Parents' Compl. ¶ 3.  Parents' purported "counter claim and/or cross appeal" is entirely redundant of Parents' appeal; it incorporates the Complaint by reference and adds nothing more.  Parents' appeal is consolidated with the DOE's appeal.  The DOE filed an answer to Parents' Complaint incorporated by reference in their "Counter Claim And/Or Cross Appeal" and has litigated Parents' stay put claims, Parents' cross-appeal, and the DOE's own appeal.  See Doc. No. 16.  In these circumstances, the Court cannot conclude that the failure to specifically answer Parents' purported counterclaim warrants a default judgment.

### 2.   Claims Not Exhausted

Pursuant to 20 U.S.C. § 1415(f)(3)(B), parents "shall not be allowed to raise issues at the due process hearing that were not raised in the [request for due process hearing], unless the other party agrees otherwise." See also Haw. Admin. R. § 8-60-65(d) (same).  The DOE has contested Parents ability to raise issues not raised in their request for due process hearing.  See DOE's Opening Br. 3-5.  Accordingly, the Court will not consider arguments raised before this Court and not raised in the request for due process hearing.  See I.T. v. Dep't of Educ., Hawaii, Civ. No. 11-00676 LEK-KSC, 2012 WL 3113166, at *13 (D. Haw. July 30, 2012) (concluding claims not raised in the request for due process hearing were not properly before the court).

One such claim is Parents assertion that the DOE did not engage in "a collaborative paradigm" that the IDEA imposes on the DOE.  Parents' Opening Br. 22.  Particularly, Parents argue that the DOE vesting sole authority in its district autism specialist, Aletha Sutton, "clearly violates this collaborative mandate under IDEA, denying Student K. a FAPE."  Id.  Because Parents did not raise this claim in their request for due process hearing, it is not properly before the Court.

Parents also assert that Student was denied a FAPE because she was not made eligible for special education under Autism.  Parents' Opening Br. 17-18.  Parents did not raise or develop this argument below and therefore this Court does not

consider it.

### 3.    The DOE's Payment of Some Funds

Parents make arguments related to the DOE's payment of funds to Parents for PAC tuition following the Hearings Officer's decision.  Parents' Opening Br. 26-27.  Parents contend that if the DOE made these payments for stay put purposes, "student's claim that DOE denied her FAPE violating 20 U.S.C. § 1415(j) is one of eligibility, dollar amount and timeliness, as parents fully satisfied all IDEA criteria having done exactly what DOE asked, to ensure prompt, immediate stay put payments."  Id. at 27 (internal citation omitted).  Parents further contend that if these funds were not stay put payments, but in satisfaction of the merits of Student's claims, the DOE's appeal is rendered moot by these payments."  Id.

The Court has already concluded that Parents' argument that the DOE's actions regarding stay put denied Student a FAPE is not properly before this Court but must first be brought in an administrative hearing.  Consequently, the Court cannot adjudicate this claim at this time.  Parents have not provided sufficient information for this Court to conclude that the DOE's appeal is rendered moot by payment of these funds. Parents have not alleged or shown that the DOE's payment would cover the full tuition reimbursement ordered by the Hearings Officer.  Moreover, the DOE has sought to have the Hearings Officer's decision

reversed, attorney's fees, and "such further relief as may be just and equitable under the circumstances." DOE's Compl. Prayer for Relief. Such further relief could include, <u>inter alia</u>, restitution of funds paid. Accordingly, the DOE's counterclaim is not moot. <u>See</u> <u>Katherine G. v. Kentfield Sch. Dist.</u>, 261 F. Supp. 2d 1159, 1188 (N.D. Cal. 2003) (rejecting the argument that a school district's appeal from an administrative decision was moot because it had already reimbursed parents for certain expenses because the court concluded it may provide for restitution to the district); <u>see also</u> <u>Dep't of Educ., Haw. v. C.B.</u>, Civ. No. 11-00576 SOM-RLP, 2012 WL 1081073, at *7 n.4 (D. Haw. Mar. 29, 2012) (noting that the court could not find any controlling authority for the proposition that a public entity cannot recover money paid to reimburse parents pursuant to an administrative decision under the IDEA and that the Ninth Circuit has not yet addressed this issue).

### 4.   Deference to the Hearings Officer's Decision

The Hearing Officer's 39-page decision, which was rendered after eight days of hearings,[11/] contains a detailed factual background and analysis. The Hearings' Officer explains most of his legal conclusions and cites specific facts supporting

---

[11/]The hearings were held on April 8, 21, and 25, 2011, May 2, 2011, and July 11, 12, and 13, and 15, 2011. <u>See</u> Admin. Dec. 3; Admin. Tr. Vols. 1-8.

those conclusions.[12/]  See J.W. v. Fresno Unified Sch. Dist., 626

F.3d 431, 441 (9th Cir. 2010); cf. Marc M. v. Dep't of Educ.,

Hawaii, 762 F. Supp. 2d 1235, 1242 (D. Haw. 2011).  The Court

finds that most of the Hearings Officer's findings of fact and

conclusions of law are "thorough and careful," and therefore

accords those findings of facts and conclusions of law

significant deference as provided for infra.  Capistrano, 59 F.3d

at 891.  Although the Court reviews the issues of law de novo,

the Court will "summarily dismiss" any "impermissible attempts to

second-guess the [Hearing Officer's] characterization and

weighing of the evidence."  R.B. v. Napa Valley Unified Sch.

Dist., 496 F.3d 932, 942 (9th Cir. 2007).

   B.   September 17, 2009 IEP

      1.   Appropriate Program

      The Hearings Officer concluded, inter alia, that the

September 17, 2009 IEP failed to offer Student an appropriate

program as the present levels of educational performance

("PLEPs") contained in the IEP do not sufficiently list Student's

behavioral and communication needs.  Admin. Dec. 26.  He

explained that it follows that the goals and objectives and

---

[12/]The Hearings Officer, however, did not explain his
decision to deny compensatory education or reimbursement for
evaluations and it is unclear if he applied the correct legal
standard to his analysis of whether the August 27, 2010 IEP
offered an appropriate placement.  Therefore, as explained below,
the Court will remand these limited portions of the
Administrative Decision for the Hearings Officer to explain his
decision.

services offered do not address the missing needs.  <u>Id.</u> at 27.
He explained that the PLEPs do not describe Student's self-
injurious behaviors ("SIBS") or contain goals related to those
behaviors.  <u>Id.</u>

The Ninth Circuit has described the IEP as "the
hallmark of the IDEA" as "[i]t provides a detailed assessment of
a student's abilities and needs and the lays out a program to
meet that student's educational goals."  <u>J.W. v. Fresno Unified
School Dist.</u>, 626 F.3d 431, 444 (9th Cir. 2010) (internal
quotations omitted).  An IEP must include "a statement of the
child's present levels of academic achievement and functional
performance, including-- (aa) how the child's disability affects
the child's involvement and progress in the general education
curriculum."  20 U.S.C. § 1414(d)(1)(A)(i)(I).  Pursuant to 14
U.S.C. § 1414(d)(1)(A)(i)(II), an IEP must include:

> A statement of measurable annual goals,
> including academic and functional goals
> designed to--
>
> (A) Meet the child's needs that result from
> the child's disability to enable the child to
> be involved in and make progress in the
> general education curriculum; and
>
> (B) Meet each of the child's other
> educational needs that result from the
> child's disability.

The DOE argues that the PLEPs in the September 17, 2009
IEP were complete based on the available information at the time
of the IEP's development.  DOE's Opening Br. 17.  The DOE argues

that the goals and objectives were appropriate and individualized
to meet Student's needs so that she could receive educational
benefit.  Id. at 20.  The DOE further asserts that the Hearings
Officer erroneously relied on the June 2009 PAC intake exam and
the data provided by speech pathologist Mary Marasovich because
Parents did not make these available to the DOE.  Id. at 18-19.

        Parents' failure to share the PAC report and
Marasovich's data does not abrogate the responsibility of the DOE
with regard to evaluating a child for purposes of drafting an
IEP.  Section 1414(c) provides that as part of an initial
evaluation or any reevaluation, the IEP team shall review
existing evaluation data, and on the basis of that review and
input from the parents, identify what additional data, if any,
are needed to determine, inter alia, "the present levels of
academic achievement and related developmental needs of the
child."  If the DOE was unable to determine Student's needs from
the data, it should have conducted further assessments.  Thus,
the failure to share the PAC and speech-language data, in this
situation, does not preclude Parents' claim.

        In any event, the information relied on by and
available to the DOE establish that the PLEPs were incomplete.
In developing Student's September 17, 2009 IEP, the DOE utilized
an Assessment of Basic Language and Learning Skills-Revised
("ABLLS") conducted by the DOE in July 2009; a UCLA report from

UCLA's assessment of Student dated January 13, 2009; a July 24, 2009 Social Communication Emotional Regulation Transactional Supports ("SCERTS"); and a physical therapy report dated July 29, 2009. See Admin. Dec. 25; DOE's Admin. Ex. 18, at 351-375 (UCLA Report); Ex. 21, at 389-395 (ABBLS report), 408-20 (SCERTS); 421-24 (physical therapy report).  Moreover, the DOE obtained Student's Maui records before developing the September 17, 2009 IEP.  See Admin. Tr. Vol. V, at 725-27.

    The UCLA report states several times that Student is nonverbal.  DOE's Admin. Ex. 18, at 351, 355, 359, 361, 363. 365. The report states that Student is beginning to learn to use the Picture Exchange Communication Systems ("PECS") and will also use some signs from American Sign Language ("ASL").  Id. at 352, 359. The report recommends that "[b]ecause [Student] is demonstrating vocalizations, focus is recommended on increased practice and generalization of her verbal utterances."  Id. at 371.  The ABBLS report notes that Student did not demonstrate any vocal imitation skills and recommended that Student's "team should make a concerted effort to increase vocalizations throughout the day in order to have a starting point for shaping language."  Id. at 390.

    Student's behavior problems are noted in the UCLA report, which states that Student "has temper tantrums with any change or demand."  Id. at 360.  The UCLA report noted in

29

observation that Student "became frustrated with most of the
presented task such that she sometimes cried, pushed the test
materials off of the table, fell to the floor, and attempted to
bang her head on the floor." Id. at 362. The report states that
it "is important that interventions focus on [Student's]
strengths and increase her independence while reducing her
maladaptive behaviors (e.g., self-stimulatory behaviors, sensory
interests, aggression)." Id. at 367. The physical therapy
report obtained by the DOE, dated July 29, 2009, noted that
Student's self-stimulating behaviors of hitting herself or
throwing herself into others had increased lately and that these
behaviors were observed throughout the morning of the evaluation.
Id. at 421. The ABLLS report states on the first page that
"[o]ver the course of ESY, problem behaviors including: self-
injurious behaviors, aggression and flopping the floor
increased." DOE's Admin. Ex. 21, at 389. The SCERTS report
notes that Student "exhibits behaviors, such as head banging,
hitting, dropping, etc." DOE's Admin. Ex. 18, at 416.

Here, the September 1, 2009 IEP failed to provide a
detailed and accurate assessment of Student's abilities and
needs. The PLEPs did not include Student's behavior problems,
particularly, her self-injurious behaviors.[13] The PLEPs, and

---

[13]The Hearings Officer noted that a health goal in the
September 17, 2009, IEP called for Student to demonstrate
increased physical and emotional regulation throughout the day

goals and objectives were incomplete due to the failure to
include Student's self-injurious behaviors.   Student's severe
behavioral problems affected her ability to make educational
progress.   It follows that an IEP that fails to appropriately
address such behaviors is not reasonably calculated to provide
meaningful educational benefit.   See Rowley, 458 U.S. at 206-07.

        The Court also agrees with the Hearings Officer's
conclusion that the September 17, 2009 IEP did not adequately
address Student's communication needs.   The IEP does not mention
Student's limited ability to sign.   See DOE's Admin. Ex. 10, at
160-78.   As speech-language pathologist Marasovich testified, the
goals and objectives do not address Student's motor planning and
muscle movement needs or adequately address Student's needs to
work on sounds.[14]   See id.

---

and the short-term objective was to refrain from exhibiting
aggressive/self-injurious behaviors on 4 out of 5 days.   Admin.
Dec. 27.   He concluded, however, that this goal was insufficient
as the PLEPs did not describe Student's aggressive/self-injurious
behaviors and the goal does not explain how the goal will be
accomplished.   Id.   The Court finds the Hearings Officer's
analysis and findings related to this issue thorough and careful,
and therefore affords this conclusion significant deference.

        [14]The DOE argues that it was improper for the Hearings
Officer to rely on PAC's intake assessment and Marasovich's
speech-therapy report.   First, the Hearings Officer did not rely
solely on these reports, but explained that Student's behavioral
problems and ability to sign were noted in the UCLA report.
Admin. Dec. 26-27.   Second, the Hearings Officer recognized that
the DOE was not provided with these reports.   Id. at 26-28.   The
Hearings Officer could properly consider the PAC assessment and
Marasovich's speech-therapy data as evidence that at the time the
September 17, 2009 IEP was developed, Student had self-injurious

The Hearings Officer also concluded that the September
17, 2009 IEP inappropriately decreased Student's OT services by
half from the July 17, 2009 Maui IEP, developed just two months
prior.  Admin. Dec. 27.  There was no indication that Student's
OT needs had decreased.  Id.  The DOE argues that the Court
cannot consider the Maui July 2009 IEP because Parents have not
challenged it in this case.  DOE's Opening Br. 3.  Although the
Court agrees it cannot rule on the merits of the Maui IEP, the
Court finds it appropriate to consider it as evidence of
Student's ability and information the DOE could have obtained
when it developed the September 17, 2009 IEP.[15/]  See Ashland Sch.
Dist. v. Parents of Student R. J., 585 F. Supp. 2d 1208, 1227 (D.
Or. 2008) (concluding that earlier IEPs and the manner they were
implemented, "may be relevant to show what information the
District had regarding [the student's] needs, what efforts the
District undertook to meet those needs, and how the student
responded").

The DOE further asserts that it was error for the
Hearings Officer to conclude that it was inappropriate that the

_____

behaviors and severe communication deficits.

[15/]The DOE also argues that Parents did not assert that these
services were inappropriately decreased in their request for due
process hearing.  DOE's Opening Br. 23-25.  Parents did assert,
however, that the September 27, 2009 IEP failed to offer
appropriate services or programs to meet her unique needs.
Admin. Rec. 8.  The Court finds this sufficient to raise the
issue that the IEP did not offer an appropriate amount of OT
services.

September 17, 2009 IEP did not have goals that worked on Student's motor planning, muscle movement, and sounds.  DOE's Opening Br. 21.  Specifically, the DOE asserts that the Hearings Officer found Student has apraxia without any credible evidence to support such a diagnosis.  Id.  This argument is without merit.  First, the Hearings Officer did not find that Student has apraxia.  Second, the reports reviewed by the DOE state that Student needs to work on motor planning, muscle movement, and sounds.  For example, the ABBLS states that Student should work on imitating fine motor movements, and the UCLA report states that Student needs treatment "to address her marked deficits in fine and gross motor skills."  DOE's Admin. Ex. 18, at 371; Ex. 21, at 389.

The record amply supports the Hearings Officer's thorough and thoughtful analysis and conclusions that the PLEPs, goals, and objectives in the September 17, 2009 IEP were inadequate because they did not adequately address Student's severe behavior problems and communication needs, that the IEP did not offer an appropriate amount of OT services, and that the IEP did not appropriately address her need to work on motor skills.  It follows that the September 17, 2009 IEP was not designed to provide Student with meaningful educational benefits and consequently, denied Student a FAPE.  Because the Hearings Officer's decision with respect to the September 17, 2009 IEP can be affirmed on this ground, it is unnecessary to consider the parties other claimed errors regarding this IEP.

C.   **The August 27, 2010 IEP**

1.   **Program**

The Hearings Officer concluded that unlike the September 17, 2009 IEP, the August 27, 2010 IEP offered an appropriate program to meet Student's needs and provided an opportunity for Student to achieve meaningful educational gains. Admin. Dec. 32.   Specifically, he rejected Parents' claims that the goals and objectives and services offered in the August 27, 2010 IEP were inappropriate; that Student needs an increase in direct speech-language services, and Student needs direct occupational and/or physical therapy services.   Id. at 31.   The Hearings Officer explained that comparing the August 27, 2010 IEP with the September 17, 2009 IEP, Student's special education, OT, and speech-language therapy minutes had increased and that the IEP clarified speech-language therapy would be direct.   Id. at 32.   He further noted that the DOE was replicating the services which Student was receiving at PAC.   Id.   Mother's concern regarding the quality of services was addressed as the IEP provided for services of a Board Certified Behavior Analyst.   Id.

The Court agrees that the August 27, 2010 IEP offers a program, i.e., an amount and quality of services, that are reasonably calculated to provide Student with meaningful educational benefit.   The Court additionally notes that unlike the September 17, 2009 IEP, the PLEPs and goals and objectives

34

are thorough and address Student's behavioral and communication

needs.  For example, the PLEPs provide, <u>inter alia</u>, that Student

is able to imitate 6 sounds or sound combinations, needs to work

on her vocal and echoic skills, needs to use 2-word sentences to

communicate her needs and express feelings and thoughts, and

lists words Student is able to sign.  DOE's Admin. Ex. 11, at

183.  The PLEPs further provide details about Student's behavior

problems, including details of Parents' concerns about her self-

injurious behaviors, and goals and objectives related to such

behaviors.  <u>See</u> <u>id.</u> at 187, 196.

Accordingly, the Court affirms the Hearings Officer's

conclusion that the August 27, 2010 IEP offers an appropriate

program.

### 2.   Placement

The Hearings Officer concluded that although the August

27, 2010 IEP offered an appropriate program, the placement set

forth in the August 27, 2010 IEP was inappropriate.  Admin. Dec.

33.  The Ninth Circuit has explained that in reviewing the

appropriateness of a special education placement, a court "must

focus primarily on the [DOE's] proposed placement, not on the

alternative that the family preferred."  <u>Gregory K. v. Longview</u>

<u>Sch. Dist.</u>, 811 F.2d 1307, 1314 (9th Cir. 1987).  A court "must

uphold the appropriateness of the [DOE's] placement if it was

reasonably calculated to provide [the student] with educational

benefits." Id.  A court must make such a determination based on the time the IEP was developed.  See J.W., 626 F.3d at 439 ("In striving for 'appropriateness,' an IEP must take into account what was, and what was not, objectively reasonable when the snapshot was taken, that is at the time the IEP was drafted.").

The Court is unable to ascertain whether the Hearings Officer applied this standard and thus will remand to the Hearings Officer the limited issue of whether the placement offered in the August 27, 2010 IEP was reasonably calculated to provide Student with educational benefits at the time the IEP was developed.  For guidance and efficiency, the Court provides the following analysis.

The August 27, 2010 IEP offered the following placement:

> [Student] will receive her special education
> services in a specially designed classroom
> which addresses her unique needs outlined in
> her [PLEPs].  The area will have minimal
> distraction where [Student] can work on her
> skill acquisition. [Student] will participate
> with her special education peers for circle
> time in this classroom (no more than a 4:1
> student ratio) and for planned, structured
> social skill lessons for 20 min 2 times per
> week.  She will participate with her no [sic]
> disabled peers for recess, assemblies, lunch,
> and field trips. [Student] will work with
> school staff in a 1:1 or 1:2 student to staff
> ratio for all other times in the day.  The
> IEP team will meet to discuss transitioning
> [Student] to a special education setting with
> a higher student to teacher ratio when
> [Student] is ready to learn in this type of
> environment.

DOE's Admin. Ex. 11, at 202.

The IDEA requires that students be placed in their

Least Restrictive Environment.  Specifically, the IDEA provides:

> To the maximum extent appropriate, children
> with disabilities, including children in
> public or private institutions or other care
> facilities, are educated with children who
> are not disabled, and special classes,
> separate schooling, or other removal of
> children with disabilities from the regular
> educational environment occurs only when the
> nature or severity of the disability of a
> child is such that education in regular
> classes with the use of supplementary aids
> and services cannot be achieved
> satisfactorily.

20 U.S.C. § 1412(a)(5)(A).  The parties agree that it is

inappropriate for Student to be educated in a regular classroom.

"[E]ven in cases in which mainstreaming is not a feasible

alternative, [however] the statutory preference for a least

restrictive placement applies."  Walczak v. Fla. Union Free Sch.

Dist., 142 F.3d 119, 132 (2d Cir. 1998) (internal quotations

omitted).  The parties disagree, however, whether it is

appropriate for Student to be placed at the home school where she

spends part of her school time in a regular educational

environment (during recess, assemblies, lunch and field trips)

and time with special education peers (during circle time and

structured social skill lessons).[16]

---

[16]The Court notes that Parents state in their opening brief
that "[h]ere, parents consented to place Student K. at Ahuimanu
in reasonable reliance on a continuing pattern of representations

The Hearings Officer agreed with Parents that Student's placement providing for partial placement with general education peers and special education peers was not an appropriate placement.  See Admin. Dec. 33-36.  The Hearings Officer explained that although the August 27, 2010 IEP placement was less restrictive than that offered at PAC, placement in this lesser restrictive environment was not appropriate as Student's behaviors were not under control.  Id. at 33.  He also noted that the DOE's autism educational assistant testified that although other students did not tease Student, sometimes other students would stare at Student as if they were curious.  Id. at 34.  He thus considered Student's sensitivities to not being understood. This conclusion is supported by Mother's testimony that other Student's would stare at Student during lunch and Student would not acknowledge other students during lunch and recess.  Admin. Tr. Vol. IV, at 611.  Additionally, the Hearings Officer noted that due to Student's behaviors, Student only participated with

_____

and assurances by Windward District Doe personnel [A.S.] that, 'the DOE could and would replicate the programming and services that PAC had.'" Parents' Opening Br. 63 (emphasis added) (second alteration in original).  Although parental consent to a placement in an IEP does not waive or otherwise preclude their right to contest that placement, a court may consider parents insistence on a certain placement in deciding whether the DOE provided a student a FAPE.  See J.W., 626 F.3d at 447-48.  Here, Parents' counsel clarified at the hearing that Parents consented to Student's placement at Ahuimanu due only to their inability to continue to finance her PAC education.  In any event, the DOE has not argued that Parents' consent supports that the DOE offered Student an appropriate placement.

special education peers once during her time at Ahuimanu.  Admin. Dec. 33.

The Hearings Officer determined that Student's lack of progress at the home school was indicative that her placement was inappropriate.  Id. at 34.  The DOE argues that it was erroneous for the Hearings Officer to rely on Student's progress because an IEP is reviewed based on what was objectively reasonable when it was developed, not in hindsight.  DOE's Answering Br. 21.  The DOE relies on the Ninth Circuit's decision in Adams v. State of Oregon, 195 F.3d 1141 (9th Cir. 1999), a case involving an Individual Family Service Plan ("IFSP") for an autistic child.[17/] The Ninth Circuit held that the district court erred in concluding it was "virtually impossible" to tell whether the student would have received a meaningful benefit because his IFSP was supplemented by private tutoring.  Id. at 1149.  The Ninth Circuit explained that the district court should not have asked whether the IFSP was adequate in light of the student's progress, but instead, whether it was appropriately designed to provide meaningful benefit.  Id.  It further noted: "We do not judge an IFSP in hindsight; rather, we look to the IFSP's goals and goal

_____

[17/]The Adams case has not been limited to IFSPs, however, and actually cited an IEP case for the proposition that "'[a]ctions of the school systems cannot . . . be judged exclusively in hindsight.'"  195 F.3d at 1149 (omission in original) (quoting Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1041 (3d Cir .1993)); see Marc M. v. Dep't of Educ., Haw., 762 F. Supp. 2d 1235, 1243–44 & n.1 (D. Haw. 2011).

achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer [the student] with a meaningful benefit." Id.

This district court has explained that "[a]lthough the student's progress after the implementation of the IEP is relevant evidence of the adequacy or inadequacy of the IEP, her progress alone is not dispositive." Summer H. v. Haw., Dep't of Educ., Civ. No. 06-00554 SPK-LEK, 2007 WL 1153807, at *6 (D. Haw. Apr. 18, 2007). Here, it is unclear how much weight the Hearings Officer placed on Student's lack of progress at Ahuimanu as he called it "indicative" of whether the home school placement was appropriate.[18/] See Admin. Dec. 34.

Additionally, the Hearing Officer's decision regarding Student's placement is unclear as to whether he concluded that Student's placement was not reasonably calculated to provide

---

[18/]For clarification on remand, the Court concludes that the Hearings Officer's determination that Student did not make progress at the home school was not erroneous. The Hearings Officer acknowledged that the DOE witnesses testified that Student had made progress during her time at Ahuimanu. Admin Dec. 34. He recognized, however, that overall, the data sheets collected by the DOE showed that Student's head-hitting and self-injurious behaviors did not decrease while Student attended Ahuimanu. Id. He credited the testimony of Mother, Board Certified Behavioral Analyst ("BCBA") Christie Reed, and psychologist Colin Denney that Student did not make progress at Ahuimanu. Id. at 35. He also noted that speech-language pathologist Marasovich testified that Student had regressed when she returned to PAC in December 2010. Id. The Court defers to the Hearing Officer's credibility determinations regarding the conflicting testimony about Student's progress at Ahuimanu.

Student with a meaningful educational benefit <u>at the time the August 27, 2010 IEP was developed</u>.  See <u>J.W.</u>, 626 F.3d at 449 (determining the IDEA was not violated when the "District's offer to mainstream Student was reasonably calculated to provide Student a benefit and was appropriate in light of the information available to the IEP team at the [IEP] meeting"); <u>Tracy N. v. Dep't of Educ., Haw.</u>, 715 F. Supp. 2d 1093, 1113 (D. Haw. 2010) ("[T]he court must examine the IEP prospectively, rather than retrospectively.") (internal quotations omitted).  For example, the Hearings Officer states that "the August 27, 2010 IEP's offer of placement at the home school was not an appropriate placement for Student <u>at this time</u>" and that "[t]o try and promote social skills <u>at this time</u>, without Student's behaviors under control and almost no communication skills, would be inappropriate."  Admin. Dec. 35-36 (emphasis added).  The "at this time" is ambiguous.  The Hearings Officer discusses Student's low level of functioning when she first attended the home school, which was shortly after the August 27, 2010 IEP was developed.  <u>Id.</u> at 33.  The Hearings Officer also stated, however, that "the home school <u>has proven</u> to be an inappropriate placement for Student."  <u>Id.</u> at 36 (emphasis added).

In sum, it is unclear from the Administrative Decision if the Hearings Officer concluded that Student's placement was inappropriate at the time the August 27, 2010 IEP was developed.

The Hearings Officer failed to state whether the placement was reasonably calculated to provide Student with meaningful educational benefit at the time the IEP was developed and implemented.  This is a complex case that involves over 1,400 pages of testimony and several volumes of exhibits.  The Hearings Officer presided over the administrative hearing and had the benefit of receiving live witness testimony.  Therefore, the Court finds that this case should be remanded to the Hearings Officer so that he may clarify, or determine in the first instance, whether the placement provided for the August 27, 2010 IEP was reasonably calculated to provide Student with a meaningful educational benefit at the time the IEP was developed and implemented.

### 3.   Failure to Implement

Parents asserted in their December 15, 2010 request for due process hearing that they sought a finding that the DOE "committed procedural and substantive violations of the IDEA, including . . . failing to appropriately implement [Student's] IEPs in the school setting, and/or failing to provide appropriately or adequately trained personnel to work with [Student]."  Admin. Rec. 48.  Parents assert that the Hearings Officer improperly failed to adjudicate their failure to implement the IEP claims.  Parents' Opening Br. 23.

Only material failures to implement an IEP constitute

violations of the IDEA.  <u>Van Duyn v. Baker Sch. Dist. 5J</u>, 502 F.3d 811, 819 (9th Cir. 2007).  Parents assert that the DOE failed to implement Student's IEP by: (1) failing to train Student's pers to support her use of sign, (2) not implementing an ASL tact and/or mand program for Student, (3) PECS cannot teach Student tacts and intraverbals, (4) deficient communication skills is Student's primary cause of SIBS, (5) failing to provide "replacement-reinforcers" for Student's SIBS, and (6) failing to implement parent education.  Parents' Opening Br. 28-40.

Parents' arguments that PECS cannot teach Student tacts and intraverbals and that deficient communication skills is Student's primary cause of SIBS do not involve the DOE's implementation of the August 27, 2010 IEP.  The Court remands the remainder of Parents' claims regarding implementation to the Hearings Officer to consider in the first instance.  The Court directs him to consider whether the DOE did in fact fail to implement portions of Student's IEP and whether any such failures were material.

### D.   Parents' Claim for Reimbursement of PAC Tuition

20 U.S.C. § 1412(a)(10)(C)(ii) provides:

If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents

> for the cost of that enrollment if the court
> or hearing officer finds that the agency had
> not made a free appropriate public education
> available to the child in a timely manner
> prior to that enrollment.

The DOE makes three arguments as to why reimbursement is inappropriate even if the Court concludes that the DOE denied Student a FAPE.  The DOE argues that (1) PAC is not an appropriate private placement for Student to be able to address and accommodate her unique educational needs; (2) Parents' conduct counsels against reimbursement; and that (3) PAC is not a "private elementary or secondary school" for purposes of the reimbursement provision of the IDEA.  DOE's Opening Br. 42-45.

### 1.   Appropriateness of PAC for Student

In establishing a private placement is appropriate for reimbursement purposes, the private placement need not provide an education that meets the IDEA's definition of FAPE.  <u>Florence Cnty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 13 (1993).  Instead, parents "need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." <u>Baquerizo v. Garden Grove Unified Sch. Dist.</u>, 635 F.3d 1155, 1159 (9th Cir. 2011) (internal quotations omitted).

The DOE asserts that PAC is inappropriate because it does not have a certified special education teacher nor an

44

occupational therapist employed by PAC or contracted to provide services directly through PAC.  DOE's Opening Br. at 42-43.  The DOE further asserts that PAC is not Student's LRE and has "a watered down curriculum."  Id. at 43.

The Court finds the DOE's arguments unpersuasive. There is no requirement that a private placement have a certified special education teacher or occupational therapist.  See Florence, 510 U.S. at 13; Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 326 (S.D.N.Y. 2005) ("The parents' unilateral placement need not have certified special education teachers or an IEP for the disabled student in order to qualify as appropriate.").  A private placement is not required to satisfy the IDEA's mainstreaming requirement for purposes of reimbursement and thus the DOE's LRE argument fails.  Cleveland Heights-University Heights City Sch. Dist. v. Boss, 144 F.3d 391, 400 (6th Cir. 1998); see Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 326 (S.D.N.Y. 2005) ("While a court may consider the least restrictive environment issue, a parent's inability to place his child in the least restrictive environment does not bar parental reimbursement.").

Although a student's progress in a unilateral private is not dispositive of the determination of whether it is appropriate, such progress is relevant.  P.K. v. New York City Dep't of Educ. (Region 4), 819 F. Supp. 2d 90, 115 n.12 (E.D.N.Y.

2011).  The record demonstrates that Student made both behavioral and communication gains at PAC between August 3, 2009 and the end of June 2010.  See Admin. Dec. 6-7; Admin. Tr. Vol. I, at 80 (testimony of former PAC program director Nancy Warren that in December 2009, Student's problem behaviors had decreased and improved in mands and signing while attending PAC); Admin. Tr. Vol. II, at 230 (testimony of PAC BCBA Christi Reed explaining Student's decrease in problem behaviors while attending PAC between August 2009 and June 2010); Admin. Tr. Vol. V, at 562-73 (testimony of Mother about Student's behavioral and communication gains made while attending PAC).  The record further demonstrates that since Student's return to PAC in December 2010, she has been making slow and steady progress.  See Admin. Tr. Vol. II, at 178-80, 258-60 (testimony of PAC BCBA Christi Reed about Student's progress since returning to PAC).  The former program director for PAC, Nancy Warren, and PAC BCBA Christie Reed provided detailed testimony about the services that PAC offers to meet Student's needs.  See Admin. Tr. Vol. I, at 15-144 (testimony of Nancy Warren); Admin. Tr. Vol. II, at 153-332 (testimony of Christie Reed).

     The Court concludes that Parents have established that PAC provides educational instruction specially designed to meet the unique needs of Student, supported by services that are necessary to permit Student to benefit from instruction.  See

46

Baquerizo, 635 F.3d at 1159.

###    2.   Parents' Conduct

The DOE argues that reimbursement, being an equitable remedy, is inappropriate in this situation.  DOE's Reply Br. 17. The DOE, in its reply brief, quotes a passage from a case that states that if a parent does not object to an IEP or placement decision at the IEP meeting, the parents' subsequent request for reimbursement of private school tuition will be denied if the parents assert that the IEP or placement is inappropriate.  Id. The DOE does not further develop this argument or make any arguments regarding the alleged lack of notice in its opening brief.  The DOE also asserts that bad faith on part of Parents counsels against reimbursement in these circumstances.  DOE's Opening Br. 43-44.

Pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(aa)-(bb), tuition reimbursement for a parental placement "may be reduced or denied" if:

> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school,

> the parents did not give written notice to
> the public agency of the information
> described in item (aa). . . .

Even assuming Parents did not provide adequate notice, such failure does not necessarily bar an award of reimbursement for past private school tuition because the IDEA only states that the cost of reimbursement "may be reduced or denied" in certain circumstances.  See 20 U.S.C. § 1412(a)(10)(C)(iii).  "Thus, this regulation cannot (by its terms) prohibit a reimbursement award made in the Administrative Decision or require any reduction of the reimbursement award, it only permits reduction or denial of an award in some circumstances."  Dep't of Educ., Haw. v. E.B., Civ. No. 05-00543 ACK-BMK, 2006 WL 1343681, at *8 (D. Haw. May 15, 2006).

Before the Hearings Officer, the DOE argued that it was unaware prior to the September 17, 2009 IEP meeting that Student had been enrolled at the private placement since August 3, 2009.  See Admin. Dec. 28.  The administrative record reveals that Parents sent a letter to the DOE stating they were rejecting the Maui 2009 IEP and enrolling Student in a private placement at public expense.  See DOE's Admin. Ex. 28, at 623.  The DOE did not object to the Hearings Officer's finding that a tape recording of the August 27, 2009 IEP meeting established that Mother disclosed that Student was attending a private placement.  See Admin. Dec. at 28-29.  Moreover, a July 3, 2009, Prior

48

Written Notice from the DOE stated that Parents are enrolling Student in a private school.  See id. at 29.

Given the DOE's either mistaken or disingenuous arguments before the Hearings Officer that they were unaware Student was attending a private placement, and lack of argument by the DOE regarding notice in its briefing, the Court finds that Parents' alleged lack of notice does not support denying or reducing reimbursement.

The DOE argues that Mother intentionally did not provide the DOE with vital documents for purposes of the IEP and that Mother interfered with the instructional process at the current home school when she repeatedly came to Student's classroom.  DOE's Opening Br. 44.  Although Mother did not tell the DOE that PAC had done an intake assessment or that Student was receiving speech-language services from Marasovich, there is no indication that she wilfully interfered with the IEP process by failing to provide the intake assessment or report from Marasovich.  The report from Marasovich was signed in October 2009, after the September 17, 2009 IEP was developed.  See Admin. Dec. 6.

Mother attended and participated in the IEP meetings. With respect to the August 27, 2010 IEP, on July 15, 2010, Mother provided the DOE with all the documents she had received including PAC reports, psychologist C.D.'s reports, and speech-

language and OT reports.  _See_ _id._ at 11.  Mother, through an

August 24, 2010 consent, agreed to the evaluations of Student

that the IEP team felt necessary.  _Id._  Through an October 21,

2010 consent, Mother granted PAC permission to release

information regarding Student's educational programming to the

DOE.  _Id._

On this record, the Court cannot conclude that Parents

acted with bad faith or that their conduct provides for a

reduction or denial of tuition reimbursement.

### 3.   PAC as a School

The DOE additionally asserts that the Court cannot

award reimbursement under the IDEA because PAC is not "a school."

DOE's Opening Br. 42.  Again, PAC need not meet state criteria to

qualify as an appropriate private placement.  _See_ _Florence_, 510

U.S. at 13.  The Court finds that the lack of the title "school"

is not the relevant inquiry.  Rather, it is whether the placement

provides educational instruction specially designed to meet the

unique needs of Student, supported by such services as are

necessary to permit Student to benefit from instruction.  _See_

_Baquerizo_, 635 F.3d at 1159.

As discussed at length in the Hearings Officer's

decision, Student is a severely disabled child that would not

benefit from regular education in a regular school.  Rather,

Student needs intensive autism-specific therapy addressed to her

unique needs.  Particularly, the Hearings Officer concluded that Student needs to work on her behavioral problems and communication needs before it is appropriate to work towards socialization or academic goals.  Admin. Dec. 36.  PAC provides the intensive autism-specific education/training that the Hearings Officer concluded Student needs and addresses her unique needs.  The Court agrees and finds PAC an appropriate private placement.  Consequently, based on the DOE's failure to offer a FAPE through the September 17, 2009 IEP, Parents are entitled to reimbursement for Student's PAC expenses from August 3, 2009 to June 30, 2010.  See Admin. Dec. 39.

**E.   Reimbursement for Private Evaluations and Compensatory Education**

In Parents' first request for a due process hearing, Parents stated that they were seeking reimbursement for the cost of private evaluation conducted by Colin Denney, Ph.D.  Parents' Admin. Ex. 2, at 13.  In their second request for a due process hearing, Parents sought reimbursement for the cost of private evaluations conducted by Keigan Blake (OT), Carol Riccio, RPT, and Colin Denney, Ph.D.  Parents' Admin. Ex. 1, at 6.  Parents also sought compensatory education in both requests.  See Parents' Admin. Ex. 1, at 4, Ex. 2, at 13.  The Hearings Officer denied Plaintiffs' requests for reimbursement for private evaluations and compensatory education without explanation. Admin. Dec. 39.  The Court remands and directs the Hearings

51

Officer to provide the reasons he denied Parents' requests.

### F.   Attorneys' Fees

Attorneys' fees may be awarded to a prevailing party under the IDEA.  As 20 U.S.C. § 1415(i)(3)(B)(i) explains in pertinent part:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs – (I) to a prevailing party who is the parent of a child with a disability.

A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Van Duyn, 502 F.3d at 825.  "The success must materially alter the parties' legal relationship, cannot be de minimis and must be causally linked to the litigation brought." Id.

Parents prevailed on several significant issues at the administrative hearing, including whether September 17, 2009 IEP and August 27, 2010 IEP offered Student a FAPE and whether Parents were entitled to reimbursement for PAC tuition.  The Hearings Officer deemed Parents' prevailing parties.  Admin. Dec. 39.  Consequently, the Court deems Parents prevailing parties at the administrative level and entitled to attorneys' fees incurred in those proceedings.  Parents should file a motion to recover such fees detailing the fees and costs.

If Parents wish to recover attorney fees for the

district court proceedings, including the stay put proceedings,
they may file a motion setting forth why they are entitled to
such fees and detailing the fees and costs.

### CONCLUSION

For the foregoing reasons, the Court DENIES Parents'
Second Motion for Partial Summary Judgment; AFFIRMS the Hearings
Officer's decision to the extent it holds Student's September 17,
2009 IEP denied her a FAPE and awards reimbursement for private
placement expenses from August 3, 2009 to June 30, 2010; and
REMANDS for the Hearings Officer to apply the correct legal
standard to whether Student's August 27, 2010 IEP offered her an
appropriate placement, whether the DOE materially failed to
implement the August 27, 2010 IEP; and to explain his denial of
Parents' request for compensatory education and reimbursement for
private evaluations.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 17, 2012.



_____
Alan C. Kay
Sr. United States District Judge

Aaron P., et al. v. State of Haw., Dep't of Educ., Civ. No. 11-
00635 ACK-RLP; State of Haw., Dep't of Educ. v. Aaron P., et al.,
Civ. No. 11-00711 ACK-KSC: Order Denying Parents Second Motion for Summary

Judgment and Affirming in Part and Remanding in Part the Administrative Decision.